A00A1356. OLIVER v. THE STATE.
(538 SE2d 837)

ANDREWS, Presiding Judge.

Harold James Oliver, convicted of misdemeanor shoplifting and sentenced as a recidivist, appeals from the trial court's denial of his motion for new trial, contending that the public defender appointed for him prior to trial was ineffective and that he did not validly waive his right to appointed trial counsel.

Viewed in a light most favorable to the verdict, the evidence was that, on September 10, 1997, around 11:00 a.m., Officer Singleton was approached by taxicab driver Babajide who said he had driven Oliver to two different hardware stores and believed that Oliver was shoplifting.[1] After Oliver had entered the Handy Ace Hardware the second time, Babajide looked inside Oliver's backpack and noticed a number of hammers and other tools. Babajide put the backpack on the curb and went to look for an officer.

Officer Singleton went to the store and spoke to floor manager Shiver who saw a man matching Oliver's description come into the store with a backpack and go into the tool department. The man

---

[3] *Mullinax v. State,* 242 Ga. App. 561, 563 (2) (530 SE2d 255) (2000).
[4] See *Wynn v. State,* 228 Ga. App. 124, 128 (3) (a) (491 SE2d 149) (1997); *Queen v. State,* 131 Ga. App. 370, 374 (4) (205 SE2d 921) (1974).
[1] This testimony was admitted as res gestae. Babajide was out of the country at the time of trial, which could not be delayed because of Oliver's pro se demand for speedy trial.

would not let anyone assist him, and Shiver saw him "fidgeting" with hammers. The Handy Ace Hardware store had one of the largest selections of hammers in the hardware business. Shiver asked Ivill, who was in charge of restocking the tool department and had just finished making up a reorder after looking over his inventory, if there were any hammers missing. Ivill rechecked the area and discovered six masonry hammers missing. Shiver checked with the cashiers and found no hammers had been sold that morning.

Officer Singleton thereafter apprehended Oliver on foot in the vicinity of the Handy Ace Hardware store. The backpack Oliver was carrying contained eight hammers, three tape measures, and three sets of drill bits. Oliver was identified as the man earlier seen in the store. Upon being interviewed by Detective Ford, Oliver refused to sign his *Miranda* warning form and was not further questioned. Oliver did, however, make the spontaneous statement to Detective Ford that "[y]ou all don't have anything on me, this is not a felony." He later made the same statement at his preliminary hearing.

Evidence of three similar transactions was introduced. Ragsdale, owner of Ragsdale Hardware in Marietta, testified that he had seen Oliver in his store several times and suspected him of shoplifting. On May 24, 1995, he went to his elevated office and observed Oliver putting several hammers down the front of his pants. Ragsdale confronted Oliver on the floor, and Oliver returned one hammer to him. Asked about the others, Oliver ran and was apprehended by Ragsdale and one of his employees. Three or four other hammers fell out of Oliver's pants. The car waiting outside for Oliver contained hammers, tape measures, saw blades, and other tools. Oliver gave the name "Harold Owens" when arrested for this offense.

On September 28, 1995, Dewhurst, owner of two hardware stores on Mount Vernon Parkway and Jimmy Carter Boulevard, was notified of shoplifting at his Mount Vernon store. Dewhurst followed the shoplifter, later identified as Oliver, to a car and confronted him. Oliver did not return the tools, so Dewhurst stood in front of the car and was carried on the hood for a short distance. He then followed Oliver in his van until Oliver stopped his car, told Dewhurst to leave him alone, and threw several hammers on the ground. Dewhurst was unable to summon police before Oliver fled. The next week, in his other store, Dewhurst saw Oliver, whom he recognized from the prior encounter, walk into the store and proceed to the hammer aisle. Oliver then saw Dewhurst and attempted to leave. Dewhurst apprehended Oliver who was then arrested. Oliver gave the name Harold Williams on this arrest.

1. Regarding counsel, Oliver does not dispute that he was appointed a public defender, Peterson, to represent him after his arrest.

He contends, however, that she was ineffective in her pretrial representation of him.

> In order to prevail on a claim of ineffective assistance of counsel [Oliver] must show that his counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985) (citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)). To meet the first prong of this test, [Oliver] must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct and that counsel's decisions were made in the exercise of reasonable professional judgment. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case. The second prong requires [Oliver] to show there is a reasonable probability that, absent counsel's unprofessional errors, the result of the trial would have been different. (Citations and punctuation omitted.) *Brown v. State*, 268 Ga. 354, 357 (4) (490 SE2d 75) (1997).

*Reynolds v. State*, 231 Ga. App. 33, 37-38 (6) (497 SE2d 580) (1998).

We must affirm the trial court's finding that a defendant has not been denied effective assistance of counsel unless that finding is clearly erroneous. *Mitchell v. State*, 242 Ga. App. 177, 179 (4) (529 SE2d 169) (2000); *Hearst v. State*, 212 Ga. App. 492, 494 (2) (441 SE2d 914) (1994).

At the motion for new trial hearing and here, the sole basis for Oliver's contention that Peterson's pretrial representation was ineffective was his contention that she failed to locate the woman he contended sold him the hammers "wholesale" at a flea market. Oliver testified that he purchased the hammers at a flea market located somewhere between Jimmy Carter Boulevard and Pleasantdale Road from a woman he could not name. Peterson, however, testified that Oliver told her he had the bag of tools from before, but she had no recollection of any mention of the flea market, nor did her file notes reflect any such information.

The trial court's conclusion that Peterson did not have this information is not clearly erroneous, and there has been no showing of ineffective assistance.

Further, Oliver has failed to show how the absence of this unknown witness prejudiced his defense,[2] even assuming that coun-

---

[2] Oliver has failed to show that there was a reasonable probability the jury would have

sel's performance was somehow deficient in not locating the witness. *Mitchell v. State,* supra at 182 (4) (c), (d); *Wallace v. State,* 228 Ga. App. 686, 690 (4) (492 SE2d 595) (1997).

2. Oliver also contends the trial court erred in denying his motion for new trial on the ground that he did not voluntarily and intelligently waive his right to counsel.

Peterson began representing Oliver after his indictment. Oliver, an experienced criminal defendant who had sixteen misdemeanor and five felony prior convictions, filed a pro se speedy trial demand before his arraignment. *Brooks v. State,* 243 Ga. App. 246, 247 (523 SE2d 763) (2000) (defendant with two prior felony and one misdemeanor convictions found "experienced" in the legal process).

During a pretrial hearing on December 15, 1997, Oliver advised the court that he was dissatisfied with Peterson and "if she can't be ready when I get ready, I will represent myself. That's it." Peterson had told Oliver that, if she were to continue representing him, the speedy trial demand would be withdrawn. He refused to withdraw it, and she withdrew from the case. The court advised Oliver he could represent himself or hire an attorney. Peterson testified at the motion for new trial hearing that she warned Oliver at that time of the dangers of self-representation.

At a later court appearance, Oliver was told by Judge Weeks that he could have an attorney, but it would be either Peterson or another public defender present in court. At that time, Peterson was reappointed for Oliver, and he agreed to her representation. Peterson filed a motion to suppress on January 12, 1998, but, when the case was called for trial on January 13, Oliver again complained about Peterson's representation.

The court fully advised Oliver of the dangers of proceeding pro se and asked him if he wished Peterson to continue representing him. Oliver stated that he knew Peterson was a competent attorney, but he felt "she is reluctant to go all out and prepare me for a trial. . . . I know more about the case than she do. And if I'm going to go down, I will at least go down with my rights and with some kind of decency. . . . I am ready for trial, your honor."

Applying the standard of *Johnson v. Zerbst,* 304 U. S. 458 (58 SC 1019, 82 LE 1461) (1938), the trial court and this Court must determine if Oliver intentionally relinquished or abandoned a known right or privilege. That determination must depend upon the particular facts and circumstances surrounding the case, " 'including the background, experience, and conduct of the accused.' *Johnson v. Zerbst,*

---

reached a different verdict, absent the error of counsel. *Gross v. State,* 262 Ga. 232, 233 (1) (416 SE2d 284) (1992).

supra at 464." *Clarke v. Zant*, 247 Ga. 194, 196 (275 SE2d 49) (1981).

As has been repeatedly held, an accused is entitled only to "reasonably effective assistance of counsel, not counsel of his own choosing. . . . [Cit.]" *Bryant v. State*, 268 Ga. 616, 617 (2) (491 SE2d 320) (1997). A request by an accused to replace one appointed counsel with another addresses itself to the sound discretion of the trial court. *Reynolds*, supra at 36 (4). Here, because Oliver did not contest the competence of Peterson, only her preparedness, as discussed supra in Division 1, there was no error in the trial court's requiring him to either proceed to trial with Peterson or represent himself. *Moody v. State*, 244 Ga. App. 214, 217 (534 SE2d 912) (2000); *Reynolds*, supra; *Jefferson v. State*, 209 Ga. App. 859, 861 (1) (434 SE2d 814) (1993).

Also, we find the warnings given by the trial court regarding proceeding pro se more than adequate, particularly considering Oliver's experience. *Clarke*, supra.

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED AUGUST 31, 2000 —
RECONSIDERATION DISMISSED SEPTEMBER 18, 2000 — 

*Harold S. Gulliver*, for appellant.
Harold J. Oliver, *pro se*.
*J. Tom Morgan, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.

